Date: April 19th 2006

U.S. DISTRICT COURT
2006 APR 21  AM 10: 51
GREGORY C. LANGHAM
CLERK
BY_____ DEP. CLK

To: The Honorable Judge Wiley Y. Daniel

From: Dana V. West
       DKa Abraham

Case #: 03-CR-128-WYD

April 19th, 2006                                         1

Honorable Wiley Y. Daniel,

It's almost like I have a new mission in life—to write to the judge. However, it is more reflective on my focused purpose in life. It's time to bring the forces to bear to wrap up this extended chapter of my life, so I can begin anew next Wednesday on projects of much greater import.

As I told you in the previous missive, this one would discuss the Supreme Court's opinions and rulings, relative to the requirement of mental illness as a necessary component of incompetency.

And there can be no doubt that perfectly sane people can be found to be incompetent.

However, all the terminology used in this far reaching and never-ending judicial debate, is the victim of floating and amorphous definitions, which can tend to leave it

in the area of murky matter.

However; intelligent, enlightened, clear-headed people like myself with vision, purpose, sensitivity and intuition are able to disdill the facts down to their essential and fundamental black and white.

I have seen evidence that you too are a member of the above exclusive elite, at least when pressure, politics, bias, pre-sentiment, ego and position don't assert themselves into the mix to shake the delicate balance of wisdom.

And so your Honor, I beseech you to grasp onto your higher and pre-eminent powers to grapple with this question, and leave the distracting forces of the lower realms below and unengaged.

③

And even if we could rely on precise definitions, we are still dealing with a very inexact science. The grand and infinitely intricate world of psychoanalysis.

However, the magic of superior analysis here depends on not succumbing to being drawn too deep into the confounding contradictions that mental science can easily entrap us into.

And in point of fact, your Honor, astute investigation and insight will reveal that the elegant resolution of this matter barely need touch on the detailed aspects of mental conditions. All that is required is an acknowledgement that some mysterious uniquely human aspects of relationship science are present.

Their dynamics don't need to be understood; only the net resultant definitive effect.

④

And that effect is summed up consisely in the phrase:

"assist properly in his defense"

And that Truly is the only issue facing us today.

And we can review statutes, case law, ~~Congression~~. Legislative History and Supreme Court rulings until we are blue in the face, but it all comes down to one thing.

And that would be - what is the teamwork rating of the Walter Gerash / Dana V. West union?

And to effectively come to the conclusion that this rating is the crux of the matter, it requires the intuition to distill out the spirit of the law, and the intent of the legislation, and the goal of the statues.

⑤

And once we have grasped
and come to terms with that,
all the miscellaneous and extraneous
pieces of this extended drama
will fall right into place.

The most elemental ~~premitive~~ underlying
concept is articulated in US v Charters
[13], which speaks of "the government's
interest in a _fair_ trial..."

That is the predominant holy
grail that provides for the impetus
to create the competency statutes
in the first place.

And this quickly leads us
to questions of the mental state
of the defendant.

And it all starts getting
very sticky when the debate moves
into mental conditions, however,
the overriding concern is always
the effect and the result of the
mental state, regardless of how it
is labeled.

6

And what is the "test" or the verifiable conditions that must be in existence?

The statutory language reads "he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

There has never been any doubt among all parties involved, that I understand the charges and the proceedings. The debate has always been over the assisting with the defense.

And it is interesting to review the different meanings attached to "assist." And even more interesting as to the causes of the problem.

It is commonly experienced that some defendants will attempt to feign incompetence by refusing to get along with their attorneys.

Cleary competent, capable persons without a dramatic mental illness could easily accomplish this. However, the ability to invoke obstinacy to ~~secure~~ avert conviction, clearly is not the intent of the competency provisions.

And that, no doubt, is why the mental illness or defect piece was inserted.

In other words the incompatibility has to be the result of innate and inherent conditions of the defendant, to shake out those who would malinger, pretend or create fictitious obstacles to compatibility.

And what has happened in this case is that there has been an extreme amount of debate as to my exact mental condition, at the expense of losing sight of the resultant effect of not being able to assist in my defense.

(8)

And the driving force behind the focus on mental illness or defect is the statutory requirement.

However, it should be inordinately clear that I am who I am. Although there have been many indicators of unwillingness, lack of cooperation, and perceived defiance, there has never even been a single suggestion that I was trying to pull the wool over anybody's eyes.

Of this there can be no doubt.

And the significance of this authenticity of character, touches on the murky waters of what is or constitutes a mental disease or defect?

Maybe is it any "imperfection" that upsets a lawyer's desire to be completely in charge?

⑨

Or could it be any idiocyncratic quirk that serves as a lightening rod to a hot button?

Or could it be an underlying manner that exascerbates a sensitive condition in the attorney - also a human with foibles, deficiencies and dysfunctions?

Or could it be a matter of style or approach, or a simple modus-operandi that doesn't mesh with two well ~~devel~~ developed individual ~~a~~ personalities?

Or could it be a clash of conversational technique and a vying for who gets to control the conversation and direct the agenda?

Or could it be a cultural clash stemming from differences of integrity and morality?

(10)

Judge Daniel, the list goes
on and on, and every last one
of them results in a plunge of
the teamwork score, incompatibility,
and the same end result of
lack of assistance in the defense.

And I would submit to you,
your Honor, that none of the above
would meet the criterion of a
bonified mental illness, however,
the concept of a mental defect
(which could realistically be construed
as the condition that upsets the
desired attorney/client relationship)
could be defined broad enough,
to include the myraid of situations
that affect harmonious human
relations.

We have only to look at the
universal relationship dysfunction
in the society at large, to confirm
that there are a lot of defective
unions, all undoubtedly caused by
some sort of mental defect.

And the particular defect in the case of Walter and myself, is that I am a member (for life) of The World Of Truth And Honesty, and Walter comes from the ~~one~~ much larger and near universal World Of Lies And Dishonesty.

And that creates a whole bevy of unresolvable and irreconcilable differences.

And yet, where is the mental illness, disease or defect?

And ~~to it~~ which party or parties does it belong to?

Does it even exist at all, or are the divergent personalities simply the conditions that prevail?

Or does my near favorite observation of Abraham Lincoln prevail :? . . .

13

That there are very few situations in life where one party is completely right or completely wrong.

Clearly, what we have here Mr. HWYD, is a legitimate failure to get along with eeach other.

And naturally, in my inimitable ~~megomaniacal~~ megolomaniacal, calm and self-assured style, I would put the lion's share of fault on Walter.

However, the reality is, that it doesn't matter who is to blame. What does matter is that it is not working, it will never work, and regardless of the root cause and whatever psychological irrelevant label you put on it, the facts are unchangable.

(13

And that, of course, makes
any psychological evaluations moot.
They are simply an additional tool
to be used if applicable and
appropriate. And in fact by statute
they are not even required, although
it typically is standard procedure.

What is required is a judgement
based on the particulars of the
participants, and the relevant and
often far-flung and variegated facts
of the matter.

And now let us look at
other historical language and
precedents on the subject.

Most notable, of course,
is the landmark Supreme Court
case refered to in section 2 of
the Legislative History, Dusky v.
United States.

(14)

This section clearly points out that "The statute does not state an explicit test for the presence or absence of mental competency to stand trial, . . . "

It goes on to say:

"The leading ~~question~~ decision on the question of the test to be applied is Dusky v. United States."

"The Supreme Court stated: We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that 'the defendant is oriented to time and place and has some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as a factual understanding of the proceedings against him.'"

(15)

Notice there is absolutely
no mention of mental illness,
mental disease or mental defect.

In other words the result
is the test, not the conditions
that may cause the result.

And, your Honor, ~~the~~ my case
has focused way too much on
the conditions, leaving the ~~most~~
relevant result ignored.

It's time for everyone to
step up to the plate, and recognize
and acknowledge the irreconciable
dysfunction in the relationship,
and end the debate.

Mental illness is not required
for an inability to assist properly
in the defense.

And in this particular case
the exact language of the Supreme
Court is not a perfect fit either.

16

Because I do have sufficient ability to consult with Walter with a reasonable degree of rational understanding.

I completely understand what he is saying. However, it is irrational nonsense, it does not address the relevant facts of the matter, and stems from his complete lack of understanding of me, plus a superficial and illogical understanding of the competency statutes, and my case and situation. And furthermore, I disagree vehemently, and I have near diametrically opps opposed strategic directions and we are always working at cross purposes, and that is why we have failed miserably, and he and his scroundrel associate Jim, have been the source of profound abuse, mistreatment and psychological pain from the onset and up to this very moment.

(17)

And the upshot of all that, speaks to the spirit of the Supreme Court test. And that would be whether or not the relationship is conducive to productive conversations leading to a legitimate defense, so that the government's interest in a fair trial may be consummated.

And your Honor, unless you want the unadulterated tour through the 3 year detailed minutiae of this irresponsible, unintelligent and inhumane on-going mistreatment, it has got to be inordinately clear that this relationship does not come close to passing the Supreme Court test.

If you want more proof, just listen to the telephone tapes from our recorded conversations. Or I would be happy to provide a 200 page (hand written) dissertation on the matter.

(18

This relationship is already on the trash heap of failure, and it needs to be judicially ended before it gets nasty.

After Jim hung up on me egregiously ~~me confused~~ yesterday, my feelings went from hatred to outright loathing. Your Honor, he is a despicable monster, whose only apparent mission is to stifle my endeavors.

My grand exoneration would be to be at the podium while I examine him and prove to the court that he is the impossible impetuous child, and for once in your court, he would have to answer a question with dignity rather than defiant refusal.

Oh, how I hope you will allow The Truth to be revealed next Wednesday!

(19

There are numerous examples
in case law supporting other criterion
than mental illness as the basis
of the competency determination.
Here is some supporting documentation:

In United States v Hemsi (1990)
"Competency inquiry includes assessing
whether defendant can assist in
providing accoounts of facts and
names of witnesses, as well as
comportment in courtroom."

These abilities can exist or
not exist, with or without a
mental illness.

In United States v. Penfroe
(3rd Circuit 1987) "aggregate of
defendant's indicia of competence
should be considered, such as evidence
of irrational behavior, demeanor at
trial and any prior medical opinion of
incompetence, attorney's representations
concerning his client's competency, and
showing of narcotics abuse.

(20)

All of the above aspects are completely independent of mental illness.

In Cooper v. Oklahoma (1996) the Supreme Court applied its aforementioned test as the basis on incompetence. Mental illness was not a pre-requite.

In Droupe v. Missouri (1975) In paragraph [1] the Supreme Court states that "A person whose mental condition is such that he lacks the capacity . . . to consult with counsel, and to assist in preparing his defense, may not be subjected to a trial."

Mental condition can be construed as being as benign as his personality make-up. That terminology falls far short of a mental illness.

(21)

In paragraph [2] it further states that "as to federal cases" it is the same "test of competence" to make the determination. Again mental illness is not even a criterion to say nothing of a requirement.

Further substantiating non-mental illness considerations, in paragraph [8] it reads "Although a trial court need not accept without question a lawyer's representation concerning the competence of his client, an expressed doubt in that regard is unquestionably a factor which should be considered."

At the hearing on Wednesday April 26, you will hear three attorneys (Walter, Jim and Jeff) testify that the relationship in question will not allow proper preparation for defense at a trial.

(22)

In paragraph [13] of the same case, further credence of the premise is validated with this snippet: "There are no fixed or immutable signs which invariably indicate the need for further inquiry to determine a defendant's fitness to proceed with the trial; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."

In other words the spirit and intent of the law and the variety of relevant factors are to be processed in the intuitive mind to make a valid determination.

And on the mental illness side of the coin in the same case at FN11, the definitiveness of a psychological evaluation is put into question with this statement:

(23)

"Even when the issue is in focus we have recognized 'the uncertainty of diagnosis in this field and the tentativeness of professional judgement.'"
Greenwood v. United States (1956)

In United States v. Prince (1991) the same Supreme Court test was applied.

Further clouding the inexact science of determining competency as relates to mental illness, in paragraph [31] of US of A v. Henley (1998), the case of US v. Riggin (1990) is referenced as follows: "noting that a personality disorder is distinct from a mental disease or defect, but basing its finding of competency on the degree to which the defendant could participate in his defense."

(24

Later in the same case
paragraph [39] it is stated:
"As noted by the Supreme Court,
'psychiatrists disagree widely and
frequently on what constitutes
mental illness.' "

And so there we have it.
This clearly is not a case where
we would want to rely on the
results of a remaining single
psychiatric evaluation.

The evaluation at best
only serves as minor additional
and ancilliary input. The prevalent
and deciding factors are otherwise
and independent, and unaffected
by any doctor's findings. Anything
that would come from the desk of
Dr. Miller is basically irrelevant
and moot.

So that is assuring, since
Walter has affirmed my position,
that it is inappropriate for me
to engage in it, under Dr Miller's

25

constrictive terms, plus, since it would only be misleading, as a practical matter, it is unlawful and my civic duty and personal integrity would accordingly preclude my participation in such activity.

I sincerely hope Honorable Daniel that my strenuous efforts have helped you to get a better grasp on primary elements of the seemingly endless debate, and afford you the opportunity to contemplate without pressure before the hearing.

Decisions made without time pressing down are always better.

I Truly hope you will allow me to take the podium and examine all the witnesses for the benefit of the court and all its participants.

26

Walter has said he would
back me up on that idea, and
presumably he will state that
in his upcoming response to the
court.

We meet tomorrow morning
for final preparations and
communication to you.

Hopefully this hearing will
also suffice as the release hearing
that was pre-empted on January 19.

I know Walter is presuming
that the Butner dangerousness
findings remain intact, and once
you affirm my incompetence, then
4246 is already complete, and
immediate release the same day
is automatic.

It clearly would be
appropriate to drop the charges
as well as return the money
and car being held in forfeiture
action.

(28)

I feel positive about my recent flurry of correspondance to you. And surely we all know by now that "cogent" letter writing is not the be-all and end-all in a competency evaluation. In this case it obviously has very little bearing, particularly considering that Exhibits A, B & C are examples of bonified published writings by the defendant. My writing ability has been present from the beginning and throughout the duration, and it clearly should never have had any bearing on the specific issue of competency in this matter.

Furthermore, it should be inordinately clear, that since I have to resort to pro-se ex-parte communication and in any excessive amount, that my defense team is not particularly supporting me.

If you really want to put
the mantle of incompetency
where it belongs, hang that dubious
distinction on the Walter
Gerash Law Firm. It is they who
did not assist me, not me, not
assisting them.

Either way, this long drawn out
affair can be finalized when you
do the right thing and dismiss
the case.

And all parties can relax
and rest assured that they all
put up a hard and noble fight.

As always, I am,

Very Truly Yours,