

# M E M O R A N D U M

To:     James Hardy
        Assistant U.S. Attorney

From:   Probation Office

Date:   September 8, 2006

Re:     Dana **WEST**                                    **STATUS REPORT**
        Docket No. 03-cr-00128-WYD

Defendant released from custody on June 6, 2006, to pretrial supervision under the standard and special conditions imposed by the Court.

Pursuant to his home detention special condition, the defendant has been required to remain at his residence except for medical appointments, court appearances, attorney visits, religious services and activities deemed appropriate by his supervising officer.  The defendant's regularly occurring schedule allows two hours each Friday for grocery shopping, banking or other errands; ten minutes each day to pick up his mail and remove his trash.   Otherwise, defendant is to remain in his residence.

Defendant has the following additional violations:  On Friday, September 1, 2006, I was alerted by BI Monitoring that defendant did not return to his residence at 1:00 p.m.  Defendant's regular Friday schedule is from 11:00 p.m. until 1:00 p.m. for shopping.  He had no prior approval for any other leave exceptions for that day.  I checked my voice mail following this alert and defendant  had left a message stating he had a medical emergency and would be going to Denver Health Services, for a 1:00 p.m. appointment.  Officer Sarah Hoppe and I went to Denver Health Services and confirmed with the subsidized heath care program and was told that defendant had no appointment in the system at this time.   Defendant returned back in range at 3:27 p.m.

On Tuesday September 5, 2006, I spoke to defendant about this violation.  He stated that he had an appointment to see someone to arrange to see a doctor.  Defendant would not disclose to me the nature of the appointment other than to say it was of a financial nature.  He said he would send me verification of the appointment.  On Thursday, September 7, 2006, I received from defendant, as proof of his appointment,  a copy of "documents required to complete financial screening for CICP, CHS, Medicaid and CHP+ Programs".  There was no date, or other information proving his actual appearance at Denver Health Services (that document is enclosed for your perusal).  I called defendant about this and he said that this was his proof.  I told him that in the future I needed verification with a date, and person's name/phone number or business card.

As a matter of policy, the probation office makes allowances for legitimate medical emergencies which would include emergency room visits or actual visits to a medical doctor.  Prior to being placed on electronic monitoring each defendant is instructed  that they are to call in on Monday's between 8:00 a.m. and 4:00 p.m.  to request leave exceptions, or changes to their schedules.  This would include any medical appointments.  It is the responsibility of the defendant to arrange appointments well in advance and then call them in on Mondays. Defendants are also instructed on how to call in a medical emergency and that it is incumbent upon them to provide  necessary verification following the emergency.  Each defendant is also instructed to not deviate from their schedule unless they speak directly to their officer. Defendant did not follow these instructions and took it upon himself to deviate from his schedule.

Defendant's attorney Walter Gerash faxed me a letter on September 6, 2006 telling me that defendant was not required to disclose his medical conditions to me and that the nature of his current medical condition was going to require last minute appointments.  That letter is enclosed for your perusal.

We would argue that it is necessary for the probation office to at least know the general nature of his condition for verification purposes.  As you are aware, defendants can easily access documents that purport to be valid in nature.  If we are unable to at least minimally confirm emergencies and other appointments, it makes monitoring the defendant somewhat meaningless.  Without necessary verification, the defendant's potential risk to the community increases.

Defendant also has incurred the following violations for leaving without authorization: Thursday, August 31, 2006 from 6:39 p.m. until 6:48 p.m.;  Saturday, September 2, 2006 from 2:47 a.m. until 2:57 a.m. and again on Sunday September 3, 2006 from 9:09 p.m. until  9:19 p.m.   I have not spoken to the defendant about these violations.

The defendant is marginally cooperative and has presented ongoing accountability issues.  At this time electronic monitoring does not seem to be an effective management tool for the defendant.  Likewise, GPS monitoring would not resolve any of the defendant's violations or prevent him from deviating from his set schedule.  Further, the defendant refused to sign a waiver to modify his bond conditions to include GPS monitoring.

Since the defendant now has a medical condition that is going to demand last minute visits to the hospital or his doctor and he will not be able to arrange these appointments in a timely manner,  management/verification of his movements will be problematic.

Defendant currently has his own apartment with two phone lines/internet access and enjoys visits from his friends.  It is our feeling that while electronic monitoring (with or without GPS) is restrictive, it allows certain luxuries that custody or a halfway house do not.  The defendant has repeatedly violated his restrictions as detailed in this memorandum and the previous memorandum dated August 17, 2006.

I also confirmed with Joe Starman, director of the Independence House South Federal/Residential Reentry Center, that he is willing to consider placing defendant into his facility in approximately three weeks, contingent upon a review of defendant's bond reports and his medical/psychological stability.  Mr. Starman would also want the defendant to disclose enough of his medical condition to determine if it would impact his staff, or other inmates.  This would provide more control over defendant's movements and may facilitate his medical treatment.

Based on the above information, we recommend that defendant be considered for placement in the Residential Reentry Center and be removed from electronic monitoring.

Respectfully submitted,

Rod Waldo
Senior Probation Officer
(303) 335-2465


APPROVED

Richard Vaccaro
Supervising Probation Officer
(303) 335-2420


cc:     Michael J. Watanabe
        Magistrate Judge