# Indiana v. Edwards

**From ScotusWiki**

Authorship:

## Contents

- 1 Briefs and Documents
- 2 Pre-Argument Articles
    - 2.1 Grant write-up
    - 2.2 Argument Preview
- 3 Oral Argument Recap
- 4 Opinion Analysis
- 5 Links and further information
    - 5.1 Video

# Briefs and Documents

**Docket:** 07-208

**Issue:** Whether the Sixth Amendment grants a defendant found competent to stand trial the right to represent himself in a criminal proceeding.

- Opinion below (Supreme Court of Indiana)
- Petition for certiorari
- Brief in opposition
- Petitioner's reply
- Amicus brief of Ohio, et al. (in support of the petitioner)

**Merits briefs** (via ABA)

- Brief for Petitioner State of Indiana
- Brief for Respondent Ahmad Edwards
- Reply Brief for Petitioner State of Indiana
- Joint Appendix

**Amicus briefs**

- Brief for the Criminal Justice Legal Foundation in Support of Petitioner
- Brief for Ohio and 18 Other States in Support of Petitioner
- Brief for the United States of America in Support of Petitioner
- Brief for the American Bar Association in Support of Petitioner
- Brief for the National Association of Criminal Defense Lawyers in Support of Neither Party
- Brief for the American Psychiatric Association and the American Academy of Psychiatry and the Law in Support of Neither Party
- Brief for the Supreme Court of Indiana in Support of Respondent

# Pre-Argument Articles

http://www.scotuswiki.com/index.php?title=Indiana_v._Edwards                3/27/2008

## Grant write-up

In *Indiana v. Edwards*, the state of Indiana argues that the states should be allowed to impose a higher standard for measuring competency to represent oneself at trial than the Supreme Court has specified for measuring competency to stand trial. The Court had ruled in *Dusky v. U.S.* in 1960 that the standard for competency to stand trial is whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him." In the case of Ahmad Edwards of Indianapolis, tried for attempted murder, battery with a deadly weapon, criminal recklessness and theft following a shooting incident outside a store where he had shop-lifted a pair of shoes, he sought to represent himself but the trial judge found him not competent to do so. He has been declared incompetent several times, but each time has been found to have his competency restored following a stay at a state mental hospital. The Indiana Supreme Court ruled he had a right to act as his own defense counsel.

The Supreme Court, in a brief orders list on March 14, agreed to allow the U.S. Solicitor General to take part in the argument on March 26. The federal government supports the state of Indiana and argues in its brief that a mentally ill defendant may be denied the right of self-representation "if the trial court determines through an appropriately particularized analysis that his conduct of the trial would frustrate important governmental interests."

(Lyle Denniston for SCOTUSblog)

## Argument Preview

The state of Indiana as petitioner argues for states to have the leeway to deny otherwise competent defendants the opportunity to represent themselves at trial when those defendants cannot communicate coherently with the court or jury. Indiana contends that refusing to allow such a defendant to proceed *pro se* does not contravene the Sixth Amendment right acknowledged by *Faretta v. California* (1975)---which held that criminal defendants have a right to refuse counsel in state criminal proceedings---because that right presumes the defendant can present a coherent defense. According to Indiana's merits brief, "[p]ersuasion requires communication. If a mental or physical trait disables a defendant from communicating, the entire point of the trial is lost unless counsel speaks for the defendant." Thus, waiving counsel without an ability to communicate is equivalent to waiving a fair trial.

Indiana illustrates how its rule would fit in with post-*Faretta* cases in which the right to self-representation was balanced against the need to preserve a fair trial and the institutional integrity of the court. Its brief points out that counsel can be imposed on disruptive defendants and that standby counsel may be imposed on any defendant demanding self-representation. Furthermore, trial courts can disqualify first-choice paid counsel against a defendant's objections when a conflict of interest is evident, in order to protect the integrity of the trial.

Indiana illustrates why its coherent-communication rule would support the requirement of *Dusky v. U.S.* (1960), that a defendant have an opportunity to consult with trial counsel. The state explains that this requirement performs two functions for a defendant who will be represented by counsel: it establishes mental capacity to stand trial, and it ensures that the trial will reasonably operate as an "adversarial test of the government's case." The first function is also fulfilled when a defendant demands self-representation, but the latter function, the "salutary practical impact on the conduct of the trial," is not. Indiana suggests that its rule would provide an "alternative mode of assurance."

The state then suggests that should the Court find its rule inconsistent with *Faretta*, then the Court should consider overruling it. The brief mounts a strong attack on *Faretta*, noting that "a right to self-representation is without solid textual, structural, or historical foundation." Indiana cites historical circumstances implying that the Sixth Amendment included no right to self-representation; its brief also argues that post-*Faretta* opinions of the Court and individual Justices have questioned that right and eroded the underlying rationale for it. Furthermore,

the state writes that "self-representation is not a right that citizens use to structure their lives based on settled expectations about the law," so *Faretta* fits the Court's criteria for revisiting precedents.

Edwards argues that *Faretta* has been reaffirmed without exception, granting and settling a right of self-representation to any defendant who chooses to proceed *pro se* voluntarily and knowingly. Edwards says he made that choice "with his eyes open." The Court candidly acknowledged in *Faretta* that the risk of self-representation is especially high for "the ignorant and illiterate, or those of feeble intellect." Nevertheless, that decision protected the defendant's "autonomy to choose that path." Edwards strongly refutes Indiana's contention that *Faretta* permits States to limit this right to defendants who meet some minimum level of competence.

*Godinez v. Moran* (1993) held in part that states are not required to demand a special showing to accept a competent but impaired defendant's waiver of counsel. Edwards says that after *Godinez*, the petitioner's proposed rule would give states complete discretion over whether to recognize the right to self-representation for that class of defendants, effectively turning "the essential rationale of *Faretta* on its head." Edwards points out that *Godinez* recognized specifically that "a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." He calls into question whether other post-*Faretta* cases cited by petitioner support greater state power over self-representation rights or are germane to this case.

Challenging the petitioner's argument about the interests in fairness and adversarial testing, Edwards argues that "there is nothing 'fundamentally unfair' about a verdict rendered after a defendant knowingly and voluntarily forgoes one or more of the 'tools' the Constitution provides for challenging the government's case." Even so, Edwards says that the broad authority Indiana argues for in denying self-representation is unnecessary because courts employ less-restrictive alternatives to the complete elimination of self-representation (e.g., standby counsel).

Edwards's brief further argues that even if the Court agrees that the Sixth Amendment allows a higher competency standard for self-representation, Edwards's rights were still violated. The trial court articulated no legal standard, much less one of the retrospective rules devised by the petitioner or its *amici*. The brief also challenges the portrayal of Edwards as incoherent and unintelligible.

Finally, Edwards deems Indiana's invitation to overrule *Faretta* as "radical." His brief states that "*Faretta* is not only settled precedent, it also has become part of the warp and woof of the law…[t]hat suggestion deserves this Court's swift rejection, both because it is not properly presented here, and because petitioner cannot show that *Faretta* was wrong." (This assertion, along with the issue of Edwards's incoherence, is addressed at length in the petitioner's reply brief.)

In fact, Edwards notes that none of the petitioner's amici, including 19 states and the United States, called for the overruling of *Faretta*. Indiana's side is indeed supported by the United States, 19 states, the Criminal Justice Legal Foundation, and the American Bar Association as *amici*. The United States, which was granted argument time, proposes that certain government interests are sufficiently compelling to justify, in particular circumstances, the denial of self-representation for a mentally ill defendant. The National Association of Criminal Defense Lawyers and the American Psychiatric Association wrote as *amici* in support of neither party.

The case is scheduled for argument on Wednesday, March 26, 2008. Solicitor General of the State of Indiana Thomas M. Fisher will be arguing for petitioner Indiana, Deputy Solicitor General of the United States Michael R. Dreeben will be arguing for United States, as *amicus curiae*, and Mark T. Stancil of Washington, D.C. will be arguing for respondent Ahmad Edwards.

## Oral Argument Recap

Lyle Denniston, for SCOTUSblog:

With Justice Antonin Scalia energetically and repeatedly making the case for a simple rule, the Supreme Court on Wednesday showed a reluctance to add a new layer of complexity to criminal trials when a person with a significant mental defect wants to act as his own defense lawyer. The core issue in Indiana v. Edwards (07-208) is whether states are constitutionally free to require that accused individuals have a higher level of mental capacity to represent themselves than is required for them simply to be put on trial with a lawyer at their side. As the lawyer for the state pressed for a two-level standard, most of the Court reacted with skepticism, first, about how to define a workable two-level test, and, second, about how that would complicate actual trials. Underlying much of the oral argument was a deep perplexity over how to conduct fair trials for persons with sub-standard mental capacity.

Scalia would come to dominate the argument, as he took the somewhat heroic position that those who represent themselves "bring it on themselves" if they botch the job, but at the same time suggesting that, in cases of actual trial disruption by a defendant who was making "a farce" of the proceeding, the trial judge should be free to act to prohibit that. Some members of the Court worried about whether such intervention by a trial judge would come too late, after "the damage had been done," as Justices Stephen G. Breyer and David H. Souter put it. But it was far from clear that the answer the majority of the Court would embrace was a brand new constitutional rule on mental competency to self-represent.

Indiana's solicitor general, Thomas M. Fisher, from early in his presentation, appeared to have difficulty winning support for the specific higher-level competency standard he was proposing: self-representation can be denied, before trial, "where the defendant cannot communicate coherently." Justice Scalia promptly labeled that "a really vague test," and other Justices soon suggested that it might turn out to exclude self-representation by those who have speech impediments on language deficiencies. Justice Anthony M. Kennedy suggested that what Indiana was arguing might lead to "more inefficiencies in the trial process." And Justice Samuel A. Alito, Jr., expressed concern that a new rule on competency "is going to result in the denial of self-representation in a great number of cases."

The Court, however, did not appear to be in agreement over when the trial judge would be allowed to make a finding that a person was not capable of defending himself: before trial, early in the trial, or after the proceedings had run for a time. While Justice Scalia vigorously objected to such a denial coming any time before trial, others — such as Justice Ruth Bader Ginsburg — indicated that, if pre-trial proceedings clearly showed an individual acting as his own lawyer would put on "gibberish" instead of any kind of real defense, a denial of self-representation might come then.

With the federal government in the case on Indiana's side, Deputy U.S. Solicitor General Michael R. Dreeben urged the Court not necessarily to embrace the state's proposal that ability to communicate be the test. The focus, he said, should be on whether "the state has a sufficient interest that would be served" by denying self-representation. Dreeben resisted Scalia's point that there should be a single standard, so that if the judge finds an individual competent to be tried, he will know that individual could then represent himself. The government lawyer stressed the differing functions he perceived in the issue of competency to be tried and competency to self-represent. "The competency threshold," Dreeben said, "does not fully address the very important interest that a state has in presenting to the world that the trial is a fair one."

He fervently resisted the notion that the trial should be allowed to go forward with self-representation once competency to be tried was established. The state, Dreeben said, should not be forced "to have the train wreck [at the trial] occur, when the evidence is very firm and reliable that it will occur."

The only member of the Court who openly expressed some sympathy for a clear-cut, two-level rule, with a higher level of compeency required for self-representation, was Chief Justice John G. Roberts, Jr. He did so during questioning of Mark T. Stancil, the Washington, D.C., lawyer representing Ahmad Edwards, the individual who

won a right to represent himself on charges of murder and battery although he had a long history of a troubled mental state.

Roberts voiced some concern that, if there were not a two-level standard, the practical effect would be that, in order to avoid having a mentally defective individual representing himself, more judges would raise the standard for competency to stand trial so that fewer individuals with troubled mental conditions would simply not be put on trial at all. Stancil suggested that states should be left free to raise the competency standard, if that's the way they opted to go to head off self-representation. The state, he added, should not also have the right to raise the self-representation standard, since "the state cannot cross to the other side of the courtroom and second guess the defendant's decision" to self-represent.

Justice Breyer introduced some complexity into the discussion, suggesting that the Court define "a small class" of accused persons who are "disturbed" and who, because of that, can be expected to "do badly" if allowed to be their own lawyer. If those could be filtered out by a higher-level competency rule, Breyer said, "we've gone a long way to deal with a serious practical problem." Stancil responded that trial judges have sufficient control over the conduct of their courtroom that they could "deal with trials that may descend into farce."

Stancil responded that trial judges have significant control over their courtrooms "to deal with trials that may descend into farce." But Justice Kennedy immediately voiced skepticism that disturbed individuals would abide by admonitions from the judge. Some defendants, Kennedy said, "don't communicate. It's two ships passing in the night or in the case of some defendants about five ships passing in the night….It's a practical matter; it's a commonsense matter. We know what goes on, and what goes on is very costly to the state and to the fairness of the trial." Stancil responded that, in an ultimate situation of disruption, the right to self-represent could be taken away. That was the point at which Breyer, first, and then Souter suggested that disruptions may have damaged the trial so that it could not be continued at all.

Stancil did not back down. What trial judges "probably need," he said, is encouragement to use the trial management rules that they have at their disposal. "You can nip it in the bud," he argued. Stancil also told the Court that it could expand the concept of disruption of a trial that would justify taking away the right to self-represent. He had some trouble with Justice Souter about whether he was changing positions, but he finally made it clear that his argument did not mean that the judge could not order standby counsel into the case if the defendant did nothing but talk "total and complete nonsense." And, he recovered some composure by pointing out that, if an individual "can't get two words out to the jury" he might not be sufficiently competent even to stand trial — a point that supported his core argument in favor of a single standard. In fact, he told Souter directly that he thought the finding of competency to stand trial in this case was erroneous.

He finished by trying to reassure Justice Ginsburg that he was not seeking an expansion of the right of self-representation, but simply its enforcement in a case that involved a defendant who was of "feeble intellect."

The Court is expected to decide the case by early summer.

# Opinion Analysis

# Links and further information

### Video

- American Constitution Society: Press briefing on the Supreme Court cases, *Crawford v. Marion County Election Board* and *Indiana Democratic Party v. Rokita* (January 3, 2008)

Retrieved from "http://www.scotuswiki.com/index.php?title=Indiana_v._Edwards"

Categories: OT07 Cases | Pending OT07 Cases | Unscheduled OT07

- This page was last modified 18:14, 27 March 2008.